[No. 4796.   Decided February 11, 1905.]

OTTO KRICKEBERG, *Appellant,* v. ST. PAUL & TACOMA
LUMBER COMPANY, *Respondent.*[1]

MASTER AND SERVANT—INJURY TO SERVANT CAUGHT IN NARROW
PASSAGE—ASSUMPTION OF RISKS.   An employee engaged in driv-
ing a horse and truck load of lumber along a narrow passage
way, who is injured by being caught between the load and a post,
by reason of depressions in the floor and the slueing of the load,
assumes the risks, where all the conditions are open and apparent
and well known to him through employment in such service for
more than a month.

Appeal from a judgment of the superior court for Pierce
county, Huston, J., entered May 16, 1903, upon the ver-
dict of a jury rendered in favor of the defendant by direc-
tion of the court, in an action for personal injuries sus-
tained by an employee in driving a load of lumber through
a narrow passage.    Affirmed.

*Govnor Teats,* for appellant, contended that the rule of
the assumption of risks does not apply in the case of such
a continuing neglect as in this case, but it becomes only a
question of contributory negligence.    *Patterson v. Pitts-
burg R. Co.,* 76 Pa. St. 389, 18 Am. Rep. 412; *Southern
Pac. R. Co. v. Yeargin,* 109 Fed. 436; *Dwyer v. St. Louis
etc. R. Co.,* 52 Fed. 87; *Harder etc. Min. Co. v. Schmidt,*
104 Fed. 282; *Green v. Western American Co.,* 30 Wash.
87, 70 Pac. 310; *Goldthorpe v. Clark-Nickerson Lum. Co.,*
31 Wash. 467, 71 Pac. 1091; *Francis v. Kansas City etc.
R. Co.,* 127 Mo. 658, 28 S. W. 842, 30 S. W. 129; *Swift
v. O'Neill,* 187 Ill. 337, 58 N. E. 416; *Huhn v. Missouri
Pac. R. Co.,* 92 Mo. 440, 4 S. W. 937; *Colorado Cent. R.
Co. v. Ogden,* 3 Col. 499; *Hawley v. Northern Cent. R.
Co.,* 82 N. Y. 370; *Gunlach v. Schott,* 192 Ill. 509, 61

[1]Reported in 79 Pac. 492.

N. E. 332, 85 Am. St. 348; *O'Mellia v. Kansas City etc.
R. Co.,* 115 Mo. 205, 21 S. W. 503; *Offutt v. World's Col.
Exp. Co.,* 175 Ill. 472, 51 N. E. 651; *Illinois Steel Co. v.
Schymanowski,* 162 Ill. 447, 44 N. E. 876; *Magee v.
North. Pac. etc. R. Co.,* 78 Cal. 430, 21 Pac. 114, 12 Am.
St. 69; *Martin v. California Cent. R. Co.,* 94 Cal. 326, 29
Pac. 645; *McMahon v. Port Henry Iron Ore Co.,* 24 Hun
48; *Sioux City etc. R. Co. v. Finlayson,* 16 Neb. 578, 20
N. W. 860, 49 Am. Rep. 724; *Lee v. Smart,* 45 Neb. 318,
63 N. W. 940; *Kearney Elec. Co. v. Laughlin,* 45 Neb.
390, 63 N. W. 941; *Northern Pac. R. Co. v. Mares,* 123
U. S. 710, 8 Sup. Ct. 321; *Parsons v. Hammond Packing
Co.,* 96 Mo. App. 372, 70 S. W. 519; *Richmond etc. R. Co.
v. Norment,* 84 Va. 167, 4 S. E. 211, 10 Am. St. 827. The
plaintiff was not guilty of contributory negligence. *Han-
nah v. Connecticut River R. Co.,* 154 Mass. 529, 28 N. E.
682; *Snow v. Housatonic etc. R. Co.,* 8 Allen 441, 85 Am.
Dec. 720; *Plank v. New York Cent. etc. R. Co.,* 60 N. Y.
607; *Kelleher v. Milwaukee etc. R. Co.,* 80 Wis. 584, 50 N.
W. 942; *Bessex v. Chicago etc. R. Co.,* 45 Wis. 477; *Kane
v. Northern Cent. R. Co.,* 128 U. S. 91, 9 Sup. Ct. 16;
*Shoemaker v. Bryant Lum. etc. Co.,* 27 Wash. 637, 68 Pac.
380; *McDannald v. Washington etc. R. Co.,* 31 Wash. 385,
72 Pac. 481; *Johnson v. Tacoma Mill Co.,* 22 Wash. 88,
60 Pac. 53.

*Reynolds & Griggs,* for respondent.

HADLEY, J.—Appellant sued respondent to recover dam-
ages for personal injuries, received while working at re-
spondent's lumber mill. Respondent was operating a large
mill plant at the place where appellant was working. The
mill was more than five hundred feet in length, and more
than two hundred feet in width, and consisted of two
stories. The lumber was sawed in the upper story, and

then brought down to the floor of the first story for dressing and other purposes.    The length of the mill ran north and south, and the width east and west.    There was a line of posts, fourteen by fourteen, running along the sides and ends of the first story, and others were scattered about over the floor of the first story.    These posts supported the frame work of the second story.    The ground floor was made of thick fir planks.

During the day time, the lumber was sawed in the second story, and loaded upon two-wheeled trucks, which were run down an incline to the ground floor, and there bunched together, not far from the surfacer, where the lumber was to be dressed.    Appellant was employed as driver of the horse that hauled these truck loads of lumber from the place where they were left by the day crew along, by and to the front end of the surfacer, as they were needed; and the same horse, also, when driven by appellant, pulled the truck loads of dressed lumber from the tail end of the surfacer out from under the mill into the mill yard.    All of this work was done upon the planked floors.

The surfacer and the tables ran north and south.    The machine itself was about ten or twelve feet long, and the table upon which the dressed lumber was received from the machine, being at the north end of the latter, was about the same length.    The machine and its extension table were fixed to the floor, so that the extreme east side thereof was six feet and six inches from the inside of the east line of posts above mentioned.    Along this space was a track, made of small iron rails.    This track was constructed so that the rails were let down into the floor, leaving the tops of the rails flush with the surface of the floor.    Upon this track, four-wheeled trucks were operated for the purpose of taking lumber from the surfacer into the yard.    The distance from the floor to the joists supporting the floor above

5-37 WASH.

was about seven and one-half feet.    From each post on the east line, a brace ran up to the corresponding joist, on an angle of forty or forty-five degrees.    The east rail of the tramway track was two feet and six inches from the east line of the posts, and the perpendicular distance from the east rail to the above-mentioned braces was five feet and six inches.

The trucks upon which the lumber was loaded had two iron wheels, the rims of which were about three inches in width, and the wheels revolved upon an iron axle.    The frame work of the trucks was made of dimension stuff, and was about eight or ten feet long, it being so placed upon the axle that, when the truck was not loaded, one end would just overbalance the other, and rest upon the floor.    The extreme width of the trucks was four feet, as represented by the cross beams, and such was also the width of the loads of lumber upon the trucks.

The appellant was furnished with a large draft horse, and was provided with harness, a whiffletree, and a chain..  His work was done at night.    His method of operation was as follows:    He took his horse to the place where the trucks loaded with lumber were bunched, wrapped the chain around the load, and underneath the frame of the truck just forward of the axle and back of one of the cross pieces in the frame, and hooked the chain underneath the load, so that it would pull straight out from the center underneath, the other end of the chain being attached to the whiffletree.    He then took his position a little in front of the left hand front corner of the load, facing the horse, put his right hand upon the load and used his left hand to drive the horse.    In this manner the load was pulled along over the floor.

The particular load that was being hauled at the time of his injury consisted of two-by-fours, about ten or twelve

feet long. This load, as was customary, had a scantling stick running out from the bottom of the rear, beyond the end and resting upon the floor, so that the load trailed along on the scantling, thus keeping the whole end of the load from dragging upon the floor. The trucks, having but two wheels, always wobbled more or less, which action, being customary, was known to the appellant. Sawdust, pieces of edging, and other small pieces of wood were frequently upon the floor, and, whenever one of the wheels struck one of these slight obstructions, the truck would slue, more or less, which was a common occurrence, and well known to appellant. In hauling these truck loads, he had daily wound around the above-mentioned posts, and under their braces, and he knew, from the necessary action of the truck, that, if he drove too close to any post and permitted himself to be between the load and a post or its brace, the load was liable to slue and catch him.

The action of the trucks had worn places in the fir floor—not holes through the floor, but mere depressions. These did not materially weaken the floor, but had a tendency to make the trucks wobble. All these depressions were open, apparent, and well known to appellant, during all the time he was engaged at his work, for more than a month immediately preceding his injury. During that time he had, on each night, driven from forty to fifty truck loads along the route, between the surfacer and the east line of the posts aforesaid, and had also driven many loads of dressed lumber out into the yard. It was his custom, when driving between the east line of posts and the surfacer, to put the east wheel of his truck on the inside of the east rail of the tramway track. He knew that this constant running of the truck wheel in one place was wearing the floor down, so that the top of the rail projected above it. At the time of the accident, the projection was

probably an inch and a half, much of which was worn when appellant began working there, and which was at all times open and apparent. The place was well lighted by electric lights. The entire environment above described was in plain view, and was well known to appellant. He was left to his own judgment as to how he should drive. The horse was entirely under his control, and could be driven as he saw fit.

While driving this particular load between the surfacer and a post opposite thereto, he was caught between the load and the post and its brace. He had driven through the same place many times before. His custom in keeping his right hand upon the load was for the purpose of steering it, and, among other things, to cause the load to slue around, and avoid a post, brace, or other obstruction. But he claims that, upon this occasion, the east wheel hit the rail, thus causing the load to slue, by reason of which he was caught and injured. Yet the exact condition he encountered had been long known to him and had at all times been open and apparent.

The foregoing is a somewhat extended but, we believe, comprehensive statement of the facts. We have been assisted much by the thorough and accurate marshalling of the numerous and peculiar details furnished in the briefs of counsel. From a careful reading of the statement of facts, we are satisfied that the above enumeration of facts and circumstances attending appellant's injury is fully verified. The cause was tried before the court and a jury. At the conclusion of the testimony offered by the plaintiff, the defendant moved the court to instruct the jury to return a verdict in its favor. The motion was granted, the verdict returned, and judgment for the defendant was entered upon the verdict. The plaintiff has appealed from the judgment.

The only question presented here is, did the court err in instructing the jury to return a verdict for the respondent, and in rendering judgment dismissing the action ? A further review of the testimony is not necessary. From the facts as hereinbefore stated, it seems to us clear that appellant necessarily assumed the risk of danger from the surroundings, as an incident to his employment, which was to do the particular work he was doing, and at that particular place. He had full knowledge of all the conditions. They were open and apparent. For weeks he had seen the situation daily. There were no dangers from hidden defects. The worn groove by the side of the track, other depressions in the floor, the relative location of the post, brace, and surfacer, and the tendency of the truck to wobble and slue the load upon striking even slight depressions or obstructions, were all known to him. The horse, truck, and load were entirely under his control. He was dependent upon no one else for the manner in which he met the manifest conditions, and which he had encountered hundreds of times before. With full knowledge, he continued to work at the place. He relied upon no promise of respondent to repair or change the surroundings. No statutory duty had been violated by respondent, whereby appellant was relieved from the assumption of the risk, as in the case of *Green v. Western American Co.*, 30 Wash. 87, 70 Pac. 310. We therefore think that, under many decisions of this court, appellant assumed the risk of danger from a situation which was open and obvious. *Week v. Fremont Mill Co.*, 3 Wash. 629, 29 Pac. 215; *Hogele v. Wilson*, 5 Wash. 160, 31 Pac. 569; *Jennings v. Tacoma R. & Motor Co.*, 7 Wash. 275, 34 Pac. 937; *Olson v. McMurray Cedar Lumber Co.*, 9 Wash. 500, 37 Pac. 679; *Bullivant v. Spokane*, 14 Wash. 577, 45 Pac. 42; *Brown v. Tabor Mill Co.*, 22 Wash. 317,

60 Pac. 1126; *French v. First Avenue R. Co.,* 24 Wash. 83, 63 Pac. 1108; *Danuser v. Seller & Co.,* 24 Wash. 565, 64 Pac. 783.

We therefore believe the court did not err in directing a verdict for respondent, and in entering judgment thereon.

The judgment is affirmed.

MOUNT, C. J., FULLERTON, and DUNBAR, JJ., concur.

RUDKIN, ROOT, and CROW, JJ., took no part.