[No. 6113. Decided September 7, 1906.]

WILLIAM H. DOYLE et al., Respondents, v. GREAT NORTHERN RAILWAY COMPANY et al., Appellants.[1]

APPEAL — ORDERS APPEALABLE — GRANT OF NEW TRIAL. An order granting a new trial is appealable under Bal. Code, § 6500, subd. 6, whether based on questions of law or fact.

NEW TRIAL—QUESTIONS PRESENTED. Where a new trial is granted for error of the court in granting a nonsuit for insufficiency of the evidence, the same presents only a question of fact.

MASTER AND SERVANT—INJURY TO SERVANT— ASSUMPTION OF RISKS —RAILROADS—GAS IN TUNNEL. A locomotive fireman on a passenger train who was overcome with gas in a tunnel nearly three miles in length, does not assume the risk of a defect in the coupler of a helper engine, which became parted in the tunnel three times, nor the risk of inferior coal used on the helper engine, where it appears that the engine had become uncoupled several times on curves while approaching the tunnel, but it was not the duty of the fireman to inspect the coupling and he was not allowed to do so, but was informed

1Reported in 86 Pac. 861.

by the engineer that it would not become uncoupled on a straight track, the tunnel being straight, and where it appears that superior coal was usually used and the fireman did not know that inferior coal would be used until he saw it put on shortly before reaching the tunnel, and no danger would have resulted from the use of such coal if the train had not become uncoupled in the tunnel; since he was given no reasonable opportunity to obviate the defects, and the danger in continuance in the performance of his duties was not so imminent as to show want of ordinary prudence in so doing.

SAME—DEFECTIVE APPLIANCES—NOTICE TO THE MASTER. In such a case, knowledge of the conductors and engineers as to the defect in the coupling, with opportunity to report the same, must be imputed to the defendant, in the absence of a showing that they did not report the defect.

SAME—CONTRIBUTORY NEGLIGENCE. Under the above facts, it cannot be said as a matter of law that the conduct of the plaintiff and his co-employees showed a reckless disregard of their own safety or the safety of the passengers on the train; and especially not after the first break in the tunnel when the safety of the passengers required the employees to remain at their posts.

SAME. Where, under such facts, the servant did not assume the risk as a matter of law, the question of his contributory negligence is necessarily decided.

Appeal from an order of the superior court for Chelan county, Steiner, J., entered November 15, 1905, in favor of the plaintiffs, granting a new trial, after sustaining a motion for nonsuit, in an action for personal injuries sustained by a locomotive fireman by reason of gas in a tunnel. Affirmed.

*L. C. Gilman,* for appellants.

*Robertson, Miller & Rosenhaupt* and *Reeves & Reeves,* for respondents.

MOUNT, C. J.—This appeal is from an order of the lower court granting a new trial. The case was brought to recover for personal injuries. It was tried by the court and a jury. When the plaintiffs rested their case, the trial court granted a nonsuit upon motion of the defendants, on the ground that the evidence showed that the plaintiff, William H. Doyle, had assumed the risk and was guilty of contributory negli-

gence. Thereupon the plaintiffs moved for a new trial. After argument on this motion, the trial court concluded that it had erred in granting defendants' motion for a nonsuit, and thereupon granted plaintiffs' motion for a new trial. The defendants have appealed.

Respondents move to dismiss the appeal upon the ground that the order granting a new trial in this case is not an appealable order. The statute, at subdivision 6 of § 6500, Bal. Code, expressly provides for an appeal from an order which grants a new trial. Respondents argue that, because the trial court based its ruling upon a consideration of all the evidence and reversed its ruling by correcting its own error, the order is not appealable. The statute makes no distinction between questions of fact and law. An order granting a new trial is appealable if it is based upon either fact or law. It is true this court will not reverse a cause upon questions of fact where the trial court acts within its discretion and without abuse of that discretion, but we will consider the merits of an appeal upon the questions decided by the trial court in granting a new trial whether such questions are of law or of fact. The questions presented here, however, are questions of law entirely, because the facts were necessarily conceded to be as stated by the plaintiffs for the purpose of raising the questions of law presented. There is no merit in the motion to dismiss, and it is therefore denied.

The facts shown by the plaintiffs are substantially as follows: On the 5th day of February, 1903, the plaintiff, William H. Doyle, was in the employ of the Great Northern Railway Company as a locomotive fireman. He was an experienced man and had been in the employ of the railway company for two or three years, and had been over the road a great many times. His run was between Seattle and Leavenworth. On the date named he was fireman on the engine which hauled the regular passenger train east from Seattle. This train left Seattle at eight o'clock p. m. on time, and arrived at Skykomish at about 10:30 p. m. At this point

about four tons of Gilman coal were taken on the engine which plaintiff was firing. This coal was of very poor quality. It emitted large quantities of smoke and gas. Crow's Nest coal was a better quality and was usually taken on at this point. This last named coal emitted but little smoke or gas. Plaintiff saw the Gilman coal taken on his engine and knew its effects. From Skykomish to the east portal of the Cascade tunnel, a distance of about twenty-six miles, the grade was quite steep, necessitating another engine to help draw the train between these points. An extra freight engine supplied with Gilman coal was attached to the train at Skykomish. After the train left Skykomish and had proceeded about six miles toward the Cascade tunnel, the coupling parted between the two engines while they were on a sharp curve. The train crew recoupled the head engine to the engine which plaintiff was firing. Plaintiff did not leave his engine or see the cause of the delay, but he knew for the first time that the coupling on the head engine was defective. After proceeding about eight miles further, the head engine again, on a curve, became uncoupled. It was again recoupled, and again proceeded. Plaintiff made no examination of the coupling, but was informed by the engineer of his engine that the coupling would work all right on a straight track. The train proceeded to the tunnel, which was about two and three-fourths miles in length. After entering the tunnel about half a mile, the head engine again parted on a straight track. It was recoupled and proceeded about a mile further, and again parted. This occurred a third time in the tunnel. At this last time all the train crew, including the plaintiff, became unconscious from inhaling the smoke and gas emitted from the engines. When plaintiff became unconscious, he fell with his left foot against the boiler of his engine, severely burning his foot and ankle.

Plaintiff had nothing to do with the couplings at any time. He had no control over the train or its movements. He knew

36—43 WASH.

that the coupler on the head engine was out of order, but he did not know its condition. He knew the character of coal which was being used, and knew that the passenger train passed rapidly through the tunnel, and that there was little or no danger from the coal if the train ran all right. The only testimony showing knowledge of the railway company of the defect in the couplers, was that the couplers did separate at the times named; that the engineers and conductor were informed thereof, and that couplers in good condition would not so separate; and that a careful inspection would have discovered the defective condition at Skykomish. Upon these facts the appellants argue that this case comes within the rule frequently stated by this court that, while the obligation rests upon the master to furnish his employee with a reasonably safe place in which to work, and reasonably safe appliances to work with, yet where the employee is in as good a position as the master to ascertain and understand the danger and does equally well know and appreciate the dangers, he cannot be heard to complain of injuries sustained through defects of which he had such knowledge or means of knowledge, and cite the following cases in support of this position: *Miller v. Moran Bros. Co.*, 39 Wash. 631, 81 Pac. 1089; *Tham v. Steeb Shipping Co.*, 39 Wash. 271, 81 Pac. 711; *Anderson v. Inland Tel. etc. Co.*, 19 Wash. 575, 53 Pac. 657, 41 L. R. A. 410; *Hoffman v. American Foundry Co.*, 18 Wash. 287, 51 Pac. 385; *Bullivant v. Spokane*, 14 Wash. 577, 45 Pac. 42; *Olson v. McMurray Cedar Lum. Co.*, 9 Wash. 500, 37 Pac. 679; *Jennings v. Tacoma R. etc. Co.*, 7 Wash. 275, 34 Pac. 937; *Krickeberg v. St. Paul etc. Lum. Co.*, 37 Wash. 63, 79 Pac. 492; *Danuser v. Seller & Co.*, 24 Wash. 565, 64 Pac. 783; *Bier v. Hosford*, 35 Wash. 544, 77 Pac. 867; *McDannald v. Washington etc. R. Co.*, 31 Wash. 585, 72 Pac. 481; *Woods v. Northern Pac. R. Co.*, 36 Wash. 658, 79 Pac. 309.

We do not think the facts of this case bring it within the
rule above stated, and certainly the facts in none of the cases
cited above are parallel with the facts in this case. The plain-
tiff here was a fireman on the regular engine, drawing a loaded
passenger train. He had no control over the train or its
movements. The coal which was usually used in the engines
passing through the tunnel was a superior grade of coal, mak-
ing little smoke and gas. Plaintiff entered upon his duties
at Seattle and worked some two and one-half hours until
they arrived at Skykomish, where a helper engine was re-
quired. Until he got to that place he did not know what kind
of coal was to be used nor what engine was to help them
through the tunnel. When he arrived at Skykomish he saw
that an inferior grade of coal was being used for that pur-
pose. He knew the character of coal, but he did not know
the condition of the engine which was to help them. He was
not required to inspect the engine or its condition, nor per-
mitted to do so. After his train had gone on its way from
Skykomish between stations, he then learned for the first
time that the coupler on the helper engine was defective, but
was then told by his engineer that it would not uncouple on
a straight track. The train entered the tunnel and there, for
the first time, parted on a straight track. Plaintiff was then
probably aware that some danger confronted the train crew
as well as the passengers, because of the defective couplers
and the character of the coal the engines were consuming.
These facts bring this case within the rule laid down by
1 Shearman & Redfield on Negligence (5th ed.), § 211, as
follows:

"The true rule, as nearly as it can be stated, is that a serv-
ant can recover for an injury suffered from defects due to
the master's fault, of which he had notice, if, under all the
circumstances, a servant of ordinary prudence, acting with
such prudence, would, under similar conditions, have con-
tinued the same work under the same risk; but not otherwise.
All the circumstances must be taken into account, and not

merely the isolated fact of risk. Thus, to take a strong case, an engineer, who should discover, for the first time, while midway between two stations, that his engine was dangerously defective, would unquestionably be justified in continuing to run it to the next station. To take a weaker case, he would still be justified in running it beyond that station, if no other engine could be obtained there, unless the danger of explosion were imminent. But can we stop there? Would not an engineer, having a train full of passengers, bound for a station, 100 miles distant, be entitled and indeed almost bound to take the train through with an engine which, though defective, is probably manageable with unusual care, and which is the only engine obtainable by which the train can be taken through on schedule time? Is there any doubt that the most prudent engineer would do so? But what is true of the engineer, under such circumstances, is equally true of all classes of servants under other circumstances, similar in principle. If every man should cease from work upon the instant of discovering that his safety was imperiled by the negligence of some other person, the business world would come to a stand. If every servant on a railroad or in a factory should refuse to work by the side of a negligent fellow-servant or with defective materials, immediately upon becoming aware of the fact, such enterprises could never be carried on. Obviously, reasonable time must be given for removal of the defect; and meantime, the business must be carried on with no prejudice to the servant's rights, unless the risk is so great that no one, acting with ordinary prudence, would go on under the circumstances."

To the same effect, see, 1 Labatt, Master & Servant, § 302a.

Appellants criticize this rule, but we think it is proper to be applied to the facts in this case. Appellants also contend that, if the rule quoted is correct, it does not apply here, because it was not shown that there was no opportunity to notify the proper agent of the company of the defects; that stations were passed after discovery of the defects, and that the evidence shows a reckless disregard on the part of the plaintiff and his co-employees, both for their own safety and the safety of the passengers on the train. Concerning the

contention that no notice to the proper agents of the company was shown when there was opportunity therefor, it is sufficient to say that the engineers and conductor on the train had notice of the defects, and that it was not necessary for the fireman who was under their control to report to any other agent of the company. When it was shown that the conductor and engineers had notice of the defects and opportunity to report, in the absence of a contrary showing, it will be presumed that they did so.

Nor do we think the evidence is sufficient as a matter of law to show that the plaintiff and his co-employees displayed a reckless disregard of their own safety, or the safety of the passengers upon the train. If we may assume that the plaintiff was equally responsible with the conductor and engineers on the train, and that it was within his power to prevent the train from entering the tunnel, we are still disposed to think it was a question for the jury to determine from all the circumstances surrounding the train crew at the time, whether a due regard for the safety of the train and its passengers permitted the train to pass into the tunnel. The engines had parted twice on curves within a distance of twenty-three miles. The distance through the tunnel was two and three-fourths miles. The track was straight. The engines had not parted on a straight track. It would not appear, therefore, to be certain that the engines would part in the tunnel, and even if they parted once therein, danger would not appear to be imminent. Upon these facts it would be a harsh rule to say that the employees were bound to know that they were running the risk of almost certain danger. After the train had entered the tunnel and the engines had again parted, danger was to be suspected on account of smoke and gas, if there was long delay or more trouble of that kind. But if the conductor and engineers in charge thought it prudent and desired to proceed on their journey, the danger not appearing imminent to them, it is certain that the plaintiff was not, and

would not have been justified in abandoning his post at any time after entering the tunnel. The safety of the passengers then required the plaintiff and every employee to remain at his post of duty, and rescue the train from the danger which would follow if it were not taken out of the tunnel. An abandonment of the train at that time by one or more of the employees meant imminent peril to the passengers on the train. Whether the train should go forward or backward depended upon the judgment of the person in charge, for which this plaintiff was accountable.

We are informed by appellants' brief that the train was rescued by an employee who was traveling as a passenger. Under the facts shown we think the plaintiff did not assume the risk as a matter of law. If we understand the contention of the appellants correctly, it is that respondent was guilty of contributory negligence solely by reason of the fact that he knew the conditions and remained at work. We find nothing in the evidence to indicate that respondent was guilty of any other negligence which contributed to the injury he received in the tunnel. Having determined that respondent did not assume the risk as a matter of law, the question of contributory negligence based thereon is necessarily decided.

We are of opinion, therefore, that the evidence was sufficient to take the case to the jury upon the question of assumed risk and contributory negligence; and that the court did not commit error in granting a new trial.

The order appealed from is therefore affirmed.

CROW, DUNBAR, FULLERTON, HADLEY, RUDKIN, and ROOT, JJ., concur.