[No. 8860.   Department Two.   December 14, 1910.]

BERNARD STARCK, *Respondent*, v. WASHINGTON UNION COAL COMPANY, *Appellant*.[1]

MASTER AND SERVANT—SAFE PLACE—COAL MINE—ASSUMPTION OF RISKS—CONTRIBUTORY NEGLIGENCE. An experienced coal miner, part of whose duty it was to put props under the overhanging coal, has a right to rely on the assurance of the foreman, made after examination in the miner's presence, that the place was safe, and does not assume the risk and is not guilty of contributory negligence in so doing.

SAME. Merely working in a dangerous place, the risk of which is not assumed by the servant, is not contributory negligence.

SAME—NEGLIGENCE—EVIDENCE—ADMISSIBILITY. Upon an issue as to whether sufficient props were furnished a miner in a coal mine, it is proper to exclude evidence as to trouble in compelling other miners to put up props.

MASTER AND SERVANT—ACTIONS—PRECEDENT CLAIM—MATERIALITY —TRIAL—OBJECTION. In an action for injuries sustained in a coal

[1]Reported in 112 Pac. 235.

mine, it is not material that no claim was made by plaintiff before suit commenced, during some four months after the accident, there being no attempt to show the purpose of such evidence, claimed on appeal to be relevant as showing false testimony by the plaintiff at the coroner's inquest.

MASTER AND SERVANT — NEGLIGENCE — COAL MINE — INSTRUCTIONS. The use of the words "any negligence," in an instruction relating to negligence in furnishing props in a coal mine, is not to be construed as relating to any other negligence not mentioned in the pleadings, where from the context the jury could not have been misled.

DAMAGES—PERSONAL INJURIES—EXCESSIVE VERDICT. A verdict for $20,000 for personal injuries sustained by a coal miner, thirty-seven years of age, is not excessive, where he had a wife and five children to support, and according to the expert witnesses he was left a broken and disjointed wreck, with no hope of recovery and only suffering and embarrassments to look forward to.

Appeal from a judgment of the superior court for Clarke county, McMaster, J., entered January 26, 1910, upon the verdict of a jury rendered in favor of the plaintiff, in an action for personal injuries sustained by an employee through the caving in of coal in a mine. Affirmed.

*W. W. Cotton, Arthur C. Spencer, James P. Stapleton*, and *Ralph E. Moody*, for appellant.

*Owens & Finck, A. L. Miller*, and *Reynolds, Ballinger & Hutson*, for respondent.

DUNBAR, J.—The appellant owns and operates a coal mine in Thurston county, in this state, and the respondent was employed to work in such mine. While working, he was injured, and brought this action against the appellant to recover damages for such injury in the sum of $25,475. The complaint alleges, among other things, that on the 5th day of May, 1909, respondent was working in a room or tunnel in said mine by excavating coal, earth and stone in the progress of the mining operations of appellant; that in said room there were three layers or ledges of coal, the top of the uppermost of which three ledges ran to the roof of said room; that in the mining of the coal it was the custom to drill between

said veins or ledges of coal for a distance of approximately six feet and place explosives therein, which explosives were fired at night, at the conclusion of the work in said room, for the purpose of throwing down and dislodging the coal and materials between the same, and upon resuming work the following day the miners loaded the coal and material into cars in said room to be taken to the surface of the mine; that occasionally the explosives would not break loose all of the upper ledge of the coal, and a portion thereof, not exceeding six feet in length, would be left adhering to the roof of said room; that respondent was accustomed to prop up, not merely the roof of the room, but also such coal in the upper seam or ledge which might adhere to the roof; that unless the roof and the coal adhering thereto were properly timbered or shored up or otherwise supported, the coal and the roof were apt to fall, and were very dangerous to miners working in the room mining the coal; that on and prior to May 3, 1909, the roof of said room, for a distance of approximately thirty feet from the working of said mine, was not propped up, or in any way timbered or shored so as to prevent the same from falling; that by reason of said fact there was danger that said roof and coal would fall; that on said date respondent complained to appellant's foreman that such roof was dangerous, and requested the foreman to furnish timber or props to be used in securing said roof and making it safe; whereupon appellant's foreman examined said roof, and pronounced the same safe, and assured respondent that the same was safe and would not fall upon him; that again, on or about the 3d day of May, 1909, respondent called the foreman's attention to the condition of said roof and that it was not propped up, and again requested the foreman to furnish him with timbers for props to secure said roof; that the foreman again assured respondent that the roof was safe, but promised to send props to said working place to be used in securing said roof; that respondent believed and relied upon said assurances of said foreman and upon his

promise to furnish timbers and props to secure said roof; that thereafter, and on the 5th day of May, 1909, there being coal from said upper seam or ledge adhering to the roof of said room, and the same requiring to be timbered or propped up, respondent again requested the foreman to furnish said props or timber; that the foreman again examined said roof and examined said coal and informed respondent, and respondent believed, that the roof and coal were not immediately dangerous; that the foreman thereupon promised to furnish props and timber to secure said roof and said coal, and respondent relied thereon, and in relying upon said assurances of the foreman, continued to work in the mine; that the foreman was the person in charge of that portion of the mine in which respondent was working, and was the proper agent of appellant to furnish props and timber for the use of said working place, and the proper person for respondent to apply to; that neither the foreman nor any other agent of appellant, nor appellant, furnished any timber for use as props whatever, to hold up or secure the roof or prevent it from falling, nor did appellant keep a sufficient supply, or any supply, at the mines so that the workmen therein might be able to properly secure the roof of said mine; that all these facts were, on the 5th day of May, 1909, and during all the time of their continuance, well known to appellant and his foreman, but that respondent relied upon said assurance of the foreman that the said place of work was safe, and upon his promise to supply props to hold up said roof, and believing said assurance and promise, continued to work at said place until the happening of the accident.

The complaint further sets out the nature of the accident and the damages arising therefrom, the accident being caused by the caving in and falling upon respondent of the coal from the roof. The answer denied the failure of the appellant to furnish respondent with props as required by law; alleged that the respondent and his fellow servant, who was

killed at the time of the injury to the respondent, were on the day of the falling of said top coal and the injury complained of, warned by the foreman of the mine and by other workmen in the mine that it was unsafe for them to continue work under such overhanging coal, and that they should prop up the same; alleged negligence on the part of the respondent; that the dangers and risks of working under this coal at the place described in the complaint were open, obvious, and apparent and understood by respondent, and were voluntarily assumed as the risk and danger incident to his employment, and that it was the duty of the respondent to use the timbers furnished him by appellant in propping up and timbering the overhanging coal as the work progressed. The affirmative matter in the defense was denied by the reply and, upon these issues, the cause went to trial by a jury, and verdict in favor of the respondent for $20,000 resulted. The ordinary motions were made before verdict. After the return of the verdict, a motion for new trial was made and refused, judgment entered, and appeal followed.

The first assignment of error is that the amended complaint fails to state facts sufficient to constitute a cause of action against the appellant, because it shows upon its face that, whatever injury respondent suffered, was caused through his own want of care and prudence, and through his own negligence, and that he directly contributed thereto and was guilty of contributory negligence; that when the respondent stated that he was accustomed to prop up, not merely the roof of said room, but also such coal of the upper seam or ledge which might adhere to said roof, and that unless such roof and said coal adhering thereto were properly timbered or shored up or otherwise supported it created a dangerous condition, that condition and other statements of the complaint which we have set forth conclusively show that it was no surprise to the respondent that the coal adhering to the roof fell upon him, for he knew that it was likely to do just what it did, and expected that it would do so; that the mat-

ters and things stated in the complaint conclusively show contributory negligence on the part of the respondent as a matter of law. Appellant cites *Green v. Western American Co.*, 30 Wash. 87, 70 Pac. 310, and *Narramore·v. Cleveland, etc. R. Co.*, 96 Fed. 298, 48 L. R. A. 68, to sustain this contention.

It is contended by the appellant that the matters and things set forth in the complaint could be brought to the knowledge of the respondent only by observation of the roof, and that being true, the respondent was in a better position to observe them, working continuously in the room with the coal, than was the foreman; that if they were in such a dangerous situation, it must be brought to the attention of the foreman by such casual observation as one in his position would make in passing in and through said room, and that the danger would therefore be much more apparent to an experienced miner who was all the time in the room working at the coal.

There are two sufficient answers to this contention. The first is that it ignores the rule, which is well established in this court and in practically all the courts in the Union, that the servant has a right to rely upon representations of the master that the dangerous condition of which the servant notifies the master will be corrected. This doctrine proceeds upon the theory that the promise of the master to amend constitutes an implied contract on his part that he will be responsible for the safety of the servant so far as the safety of the place is concerned; or in other words, that he will assume the risk incident to working in the particular place. It is true the complaint says that the roof had become dangerous, and no doubt it was the belief of the respondent that the roof was dangerous. But upon reporting the danger to the foreman, this promise was made, with the assurance on the part of the foreman that·the roof was safe. That assurance was made after an examination by the foreman in the presence of the respondent, and upon that assurance and promise respondent unquestionably had a right to rely. Nor should the ex-

amination made by the foreman under such circumstances have been a casual examination or observation. His duty was to inspect not casually but thoroughly, and it was upon the presumedly thorough inspection that the respondent had a right to rely.

Nor do we think that the allegations of this complaint bring it within the cases cited to sustain it. It is true that in *Green v. Western American Co., supra,* which was the first case in this jurisdiction to lay down the rule that the master assumed the risk where the statutory requirements in regard to safe place and appliances had not been complied with, there were some expressions used by the court which might readily lead to the conclusion that the doctrine claimed for it by the appellant was true, viz., that while the plaintiff in an action for damages in a case brought under the statute for violation of, failure to guard, or make safe, would not be held to have assumed the risk, he would be held to have been guilty of contributory negligence for working in an unsafe place. But this doctrine certainly never was intended by the court to be carried so far as to hold that a plaintiff would be held guilty of contributory negligence for working in a place where he would not be held to have assumed the risk in working. No court would trifle with the rights of a litigant to such an extent as to hold that he could recover in a given case because he did not assume the risk of working in a certain place, and then hold that he could not recover because he was guilty of contributory negligence in working in that certain place. This would be allowing words and terms to control a principle. If the contention of the appellant were to be sustained, it would destroy the logic of the decision in *Green v. Western American Co., supra,* for in that case the complaint was in principle identical with that in the case at bar. That was a coal mine case where the plaintiff had been injured by the falling of the coal, for the reason that the walls had not been propped, exactly as in the case at bar. In that case the complaint also showed, as in this, that it became

necessary to timber and prop the cross-cut where the plaintiff was working, so as to protect him from falling coal and rock, and that he requested the pit boss to furnish him with timbers to be used as props for the purpose of protecting himself; but that the pit boss, as in this case, requested the plaintiff to proceed to his working place, assuring him that the place was safe and did not need and require timbers, but that he would shortly furnish the plaintiff with timbers to prop; that by reason of such representation on the part of the pit boss, he went back to work; that by reason of the failure of the pit boss to furnish the props, the coal fell and he was injured. It would be difficult to distinguish the complaint in that case in principle from the complaint in the case at bar.

*Narramore v. Cleveland etc. R. Co., supra,* which is the case upon which the *Green* case to a large extent was founded, does not sustain appellant's contention. It is true that it was there said that many authorities hold that contributory negligence was a defense to an action arising from the violation of a statutory duty; and that was undoubtedly the proper view, citing cases to sustain that rule. There can be no question but that cases might arise where contributory negligence would be an element in the case available to the defendant, but the two propositions have no real relation to each other. One relates to the risks assumed by an employee in the entering into a given service, and the other to the vigilance to be exercised by the employee under certain circumstances; that is to say, that the servant may be guilty of contributory negligence in a case where the master has neglected or refused to perform a statutory duty, but the negligence has no relation to the place, but must be negligence in the doing of some independent act on the part of the servant, which is the proximate cause of his injury. It must be borne in mind, however, that it is this independent act of the servant, instead of the danger of the place or of the machinery, which causes the accident. This view has been sustained by this court in *Hall v. West & Slade Mill Co.,* 39 Wash. 447,

81 Pac. 915, which was the first case affirming the doctrine announced in the *Green* case.  There it was said:

"But it will hardly do to say that an employee is guilty of contributory negligence for merely working in a dangerous place when he does not assume the risk of injury for working therein.  It is true that in such cases contributory negligence and assumption of risk approximate, and it is difficult to draw a line between them, but we think that, to convict an employee of contributory negligence for working in a place where he does not assume the risk of injury, it must be shown that he did not use care reasonably commensurate with the risk to avoid injurious consequences; in other words, that it was some negligent act of his own that caused his injury, and not alone the dangers of his situation."

In *Doyle v. Great Northern R. Co.*, 43 Wash. 558, 86 Pac. 861, the court said:

"Having determined that respondent did not assume the risk as a matter of law, the question of contributory negligence based thereon is necessarily decided."

In *Johnson v. Far West Lumber Co.*, 47 Wash. 492, 92 Pac. 274, it was held that an employee who works about machinery after having notice that it is not guarded as required by the factory act, and the risk of which condition he does not assume, is not thereby guilty unless the injury is caused by a negligent act of his own and not alone by the danger of his situation.  This must be the true and only distinction.  We therefore conclude that the complaint was sufficient in this case to place the defendant upon trial.

There was no error upon the part of the court in sustaining objection to the question to witness Needham: "What do you know of your own knowledge as to the trouble, if any there was, had there with compelling the miners to put up props?"  The controlling question in this case was whether the appellant had furnished the props as required.  The fact that the appellant may have had trouble with other miners in this regard would in no way bind the respondent.

It is also earnestly contended that the court erred in sus-

taining objection to the following question to the witness Needham: "Did he or any one in his behalf ever present a claim to you or to the company for his injuries in this case prior to the filing of the complaint in this case?" The following objection was made by Mr. Ballinger, counsel for respondent: "We object on the ground of not material, not relevant, not responsive to any issue in this case whether Mr. Starck has presented any claim to the company prior to the bringing of the suit." The objection was sustained and exception noted. The contention of the appellant is that, inasmuch as the testimony was exceedingly conflicting, as it is claimed that at the coroner's inquest the respondent exonerated the appellant from any blame for the accident and stated that props had been furnished, and that if he had not presented a claim between the time of the accident and the bringing of the action, which we believe was some four months, these would be circumstances which the jury would have a right to consider tending to show that the respondent had sworn falsely upon the hearing of this cause. It might be possible that under some circumstances a question of this kind would throw light upon the case and the point in issue. But this question, if such was its purpose, was not brought to the attention of the court or the counsel for respondent. It evidently was the understanding of the court and of counsel for respondent that the objection was made simply upon the theory that it was not necessary as a matter of statutory requirement for this claim to have been presented, as it is required to be in damage cases against municipal corporations. Counsel for appellant was content to simply ask the question without enlightening the court as to its relevancy. On its face it was not relevant, and we think it would be doing a great injustice to reverse this case, because the question was properly objected to so far as its object was indicated.

Objection is made to many of the instructions given by the court and the refusal of the court to give instructions offered. Appellant sets forth many general principles of law governing

and controlling instructions, citing cases to sustain those principles; but from an examination of the instructions given and refused, we think such principles were respected by the court in this case. In considering the instructions given, and requested and refused, the appellant directs the court's attention to requested instruction No. 7, refused by the court, and to instruction No. 16, given by the court. Requested instruction No. 7 was as follows:

"I further charge you that the law requires the defendant to furnish sufficient timbers for props with which to safeguard the roofs above where the plaintiff is working, and if the defendant has failed to do that and the plaintiff has been put to an election whether he will go ahead and risk the danger or quit working, and he concludes to go ahead and work, it becomes a question as to whether in so doing he acted with due care or recklessly exposed himself to obvious and imminent danger. If while in the exercise of due care he is injured by reason of the fact that the company, after request, wilfully failed to furnish sufficient or suitable timbers with which to prop the roof, his injury is then due to a violation of the statute on the part of the company and they are responsible. On the other hand, if the danger is obvious and imminent and it is nothing but recklessness for the plaintiff to have exposed himself to it, then I charge you that the law will not permit the plaintiff to recover, for the injury in that event is due directly to his own lack of ordinary prudence."

It will be seen that the contention in this instruction was the same contention that was made by the appellant which we have discussed, in relation to the sufficiency of the complaint. However, instruction No. 16, given by the court, was as follows:

"You are instructed that one of the defenses set forth in the answer is that the dangers of the working place where plaintiff claims to have been injured were open and apparent to him and were known to him, and that by working in said place he assumed the risk thereof. I instruct you that if you find from the evidence that defendant performed its statutory duty, as hereinbefore defined to you in these instructions, and was not guilty of any negligence, and that there still remained

a peril and risk to the plaintiff at said working place, and that the same was open and apparent to plaintiff, or known to him, or that he had such notice thereof that a man of ordinary prudence under like circumstances would have discovered such danger, then plaintiff did assume the risk of such danger, and if he was thereby injured he has no redress; but if you find from the evidence that the danger to plaintiff at said working place, if any, was caused by the neglect of defendant to perform its said statutory duty, if it did fail to perform the statutory duty, and that it was by reason of such negligence that plaintiff was injured, if he was injured, then you are instructed that plaintiff did not assume the risk of injury through such neglect."

It seems to us that the appellant's rights were guarded in an exceedingly liberal manner in this instruction, and that the only objection that can be raised to it is the very technical objection as to the use of the word "any" in the early part of the instruction. It is contended by the appellant that there was no other negligence than the negligence of neglecting to perform its statutory duty in relation to the furnishing of props, and that under the instruction the court authorized the jury to consider the question as to whether appellant had been guilty of some other negligence, thereby authorizing the jury to take into consideration a fact that was not in the pleadings, and particularly not in the evidence; and that the instruction was therefore erroneous. But we think this is too narrow a construction to place upon this instruction. There was probably an unfortunate use of the word "any," but we think the jury well understood when the court said: "I instruct you if you find from the evidence that the defendant performed its statutory duty as hereinbefore defined to you in these instructions, and was not guilty of any negligence," that the court had reference not to any other negligence, but any negligence in not performing its statutory duty as thereinbefore defined. If judgment were reversed for every little mistake made in the use of language by courts while instructing juries, the wheels of justice would be effectually blocked.

The court further instructed the jury as follows, in No. 14 of the instructions, which is also objected to by the appellant:

"You are instructed that if you find that the defendant failed and neglected to keep a sufficient supply of timber at the mine where plaintiff was working, required for use as props so as to enable plaintiff to properly secure the said workings from caving in, and failed and neglected to send down into the mine such props as were required, and to deliver the same at the entrance of the working place, then you are instructed that plaintiff cannot be held to have assumed the risk of such danger, if any, as you may find there was, of injury to him from the caving in of his working place, for want of such props ; nor can you under such circumstances ascribe to plaintiff contributory negligence solely by reason of the fact that he worked in said place, if he did so work, unless the peril of working there, if any, was so obvious or imminent that any man of ordinary prudence would not have worked there under like circumstances, but if you find that such danger was so obvious and imminent that no man of ordinary prudence would incur it, then I charge you that the law will not permit the plaintiff to recover."

This instruction surely went as far as any court has ever gone in protecting the interests of the defendant, and the court made the distinction which this court has made when it said: "nor can you under such circumstances ascribe to plaintiff contributory negligence simply by reason of the fact that he worked in said place, if he did so work."

Many other assignments of error are made in relation to the instructions, but they are principally based upon the reason alleged to support the assignment that the complaint did not state a cause of action. There was but one issue in this case, viz., the negligence charged that the appellant did not perform its statutory duty. The instructions squarely placed that question before the jury. Both the theory of the appellant and the theory of the respondent in relation to that question were fairly presented. No errors can be discerned in the giving or refusing instructions, nor in the admission or rejection of testimony. The question at issue was properly

submitted to the jury, and they decided it against the appellant.

There is one remaining question which has given us more trouble. The judgment is for $20,000, and a judgment of this magnitude in a case of this kind will, and should always, challenge the attention of the court, and compel the closest scrutiny of the testimony on which the verdict in this respect is based. But after such scrutiny, we are unable to say that the amount of the verdict was any indication of passion or prejudice on the part of the jury, or that it was more than would reasonably compensate the respondent for the injuries sustained and the suffering imposed. The respondent at the time of the injury was thirty-seven years old, and had a wife and five children depending upon him for support. We will not attempt to describe his condition in detail, but if the testimony of unimpeached doctors, who are evidently physicians of ability and standing and strangers to the respondent, is to be credited, to say nothing of the testimony of the respondent, he is left a broken and disjointed wreck, with no hope of improvement, and with nothing to look forward to but suffering and embarrassments. Appellant offered no testimony on the subject of the injury. Under such circumstances we would not be justified in interfering with the verdict of the jury.

The judgment will be affirmed.

RUDKIN, C. J., MORRIS, CHADWICK, and CROW, JJ., concur.