[No. 21925.   Department One.   September 5, 1929.]

CITIZENS NATIONAL BANK OF LOS ANGELES, *Respondent,*
v. ADOLPH GALLAND *et al., Appellants.*[1]

[1]Reported in 280 Pac. 62.

*Randall & Danskin*, for appellants.

*E. H. Belden*, for respondent.

BEALS, J.—Plaintiff, a California corporation, in its original complaint based upon a promissory note for $3,000, dated March 17, 1926, signed "Western Engineering & Construction Co. by C. A. McNeill," named, as parties defendant,

"Adolph Galland, Janet Converse, C. A. McNeill, E. L. Lindsey, and Howard J. Fish, copartners doing business under the firm name and style of Western Engineering & Construction Co."

Plaintiff later filed an amended complaint naming, as defendants, Adolph Galland, Janet Converse, H. Louis Schermerhorn and C. A. McNeill, "an association and copartnership doing business under the firm name and style of Western Engineering & Construction Co.," and, later, by trial amendment, there was added to the allegations contained in its amended complaint a paragraph alleging that section 388 of the Code of Civil Procedure of California, of 1923, reads as follows:

"Associates may be sued by name of association. When two or more persons, associated in any business, transact such business under a common name, whether it comprises the names of such persons or not, the associates may be sued by such common name, the summons in such cases being served on one or more of the associates; and the judgment in the action shall bind the joint property of all the associates, and the individual property of the party or parties served with process, in the same manner as if all had been named defendants and had been sued upon their joint liability."

Of the defendants named, only Adolph Galland and H. Louis Schermerhorn were residents of the state of Washington, and they were the only defendants served with process in this action. The other defendants,

being residents of the state of California, were not served, nor did they make any appearance herein.

Defendants Galland and Schermerhorn answered separately, denying the allegations of plaintiff's complaint, and upon the issues so made up, the action proceeded regularly to trial. At the close of plaintiff's case, each of the defendants moved for a nonsuit, which motions were by the trial court granted. Plaintiff moved for a new trial on the following grounds:

"(I) That the decision of the court is contrary to law.

"(II) Error in law occurring at the trial, and excepted to at the time by plaintiff.

"(III) Accident and surprise which ordinary prudence could not have guarded against,"

which motion the court granted generally, without stating upon which ground the court based its ruling. From the order granting a new trial, defendants appeal.

From the evidence, it appears that, during the year 1923, defendants Janet Converse and C. A. McNeill were doing business as heating and ventilating contractors in the city of Los Angeles, under the name of Western Engineering & Construction Co., the exact nature of the partnership not appearing from the record. During the same year, defendant Schermerhorn was interested in Frank Crosson Sheet Metal Works, a copartnership, also doing business in the city of Los Angeles, as proprietor of a sheet metal works, which copartnership was marketing a particular gas furnace under authority from the owner of the patent. In March, 1924, defendant Schermerhorn, with other persons, organized a new corporation under the laws of California, named "Western International Heating Company" (hereinafter referred to as the Heating Co.), to which corporation were transferred the assets

of the business known as Frank Crosson Sheet Metal Works.

The new corporation then commenced to manufacture the patented gas furnaces, naming the same the "Hot-Kold" furnace. It being suggested that the selling and installing of the "Hot-Kold" furnaces might also be profitable, and that the partnership business of defendants Converse and McNeill might advantageously take over such selling rights for the state of California, defendants Schermerhorn and Galland decided that they would like also to become interested in this portion of the business. Negotiations were entered into, which, after some time and much discussion, resulted in an agreement on the part of defendants Converse and McNeill to incorporate under the name of the Western Engineering & Construction Co. (hereinafter referred to as the Construction Co.) to take over the selling and installing of "Hot-Kold" furnaces as manufactured by the Heating Co., it being understood that defendants Schermerhorn and Galland were to become stockholders in the corporation, though it does not appear that the proportion of the stock to be issued to them was agreed upon until a later date. Articles of incorporation were, during the spring of 1924, prepared, signed and filed in the office of the secretary of state of California, appellant Schermerhorn being elected president and defendant Janet Converse, secretary, respectively, of each of the two corporations, Western International Heating Co. which was to manufacture the furnaces, and Western Engineering & Construction Co. which was to market them.

It does not appear from the record that either of the appellants ever agreed or expected to become associated with defendants Converse and McNeill in any partnership, but May 19, 1924, appellant Schermerhorn

subscribed for $6,000 par value of the capital stock of the new corporation on his own behalf, and for $5,000 par value of the stock on behalf of appellant Galland. Mr. Galland later paid his entire subscription in cash, and Mr. Schermerhorn paid $2,000 on account of his subscription.

Western Engineering & Construction Co. was unable to procure a license from the proper authority of the state of California authorizing it to issue its stock, and consequently it never functioned as a corporation; neither did appellants ever receive any of the stock in the corporation for which they subscribed.

Defendants Converse and McNeill proceeded to install some of the "Hot-Kold" furnaces, and, instead of discontinuing their contracting business as they had expected to do, resumed operations under the old name of Western Engineering & Construction Co., under which name they had attempted to incorporate. Defendant Converse testified:

"Yes sir; under our contract with Mr. Schermerhorn and his company, we went out of the steam heating business and made the business of selling furnaces our sole business, and when they refused any longer to manufacture them, we went back into the steam heat business again."

It does not appear that appellants, who were residents of the city of Spokane, had any knowledge or information of the fact that defendants Converse and McNeill were carrying on the contracting business, in which they had formerly been engaged, under the old firm name of Western Engineering & Construction Co. In the course of the carrying on of this business, defendant McNeill, March 27, 1926, signed the note sued upon, turning over to the payee, as collateral, certain contracts referred to therein. This note, was, in part

at least, a renewal note evidencing an indebtedness which had been due respondent for some time.

Defendant Converse testified that it was never contemplated that Messrs. Schermerhorn and Galland were to have any interest in the old steam heating contract business, and that the business of the former copartnership between herself and defendant McNeill was at all times kept separate from the business done after the execution of the articles of incorporation which were attempted to be filed.

The testimony, which it must be remembered was all introduced on behalf of plaintiff, shows no definite agreement that appellants Schermerhorn and Galland were to have any specified interest in the Construction Co. until May 11, when defendant Converse wrote Mr. Schermerhorn a letter, to which he replied May 19 following, making the stock subscriptions above referred to on behalf of himself and Mr. Galland. We find no suggestion in the evidence that either Mr. Schermerhorn or Mr. Galland ever intended to, or did, become associated with defendants Converse and McNeill as copartners, or that any of the parties contemplated that either of them would participate in any of the business referred to other than as stockholders in the Construction Co., which company was to confine itself exclusively to the selling and installation of "Hot-Kold" furnaces.

Respondent contends that the evidence shows that there was some partnership or association between appellants and defendants McNeill and Converse which renders appellants liable to respondent upon the note sued upon.

Respondent offered in evidence a copy of a financial statement, made on a blank furnished by respondent, under date May 11, 1925, on behalf of Western Engineering & Construction Co., showing, under the

heading, "Officers, Directors and Principal Stockholders and Number of Shares Owned by Each, if unincorporated, give names of all partners and interest of each," the names "Adolph Galland, Janet Converse, C. A. McNeill, E. L. Lindsey," and, in another column, "Howard J. Fish." This portion of the statement contains no information as to whether the persons named were stockholders or copartners, nor does it purport to state whether the business was conducted by a corporation or a partnership. The statement was signed, "Janet Converse—Partner." The addresses of the persons named are not given in the statement, nor does it appear that respondent made any effort to find out who these persons were, where they lived, what they were doing, or whether or not they, in fact, had any interest in the business. On objection by appellants, the trial court refused to admit this statement in evidence, but the same is before us, properly identified, as an offer on the part of respondent. The statement is, of course, no evidence against appellant Schermerhorn, as his name is not mentioned therein.

This being an appeal, taken by parties who were defendants below, in a civil action tried to the court without a jury, from an order granting a new trial, after motions for a nonsuit by defendants had been sustained, we will, in determining the appeal, consider the statement referred to as though the same had been regularly admitted in evidence for what, if anything, it was worth. Under the circumstances disclosed by the record, we are unable to determine that the statement referred to is of any probative force even as against appellant Galland. No element of estoppel was present, and, in the absence of evidence tending to establish estoppel or tending to prove that Mr. Galland was actually interested in the business, the fact that defendant Converse included appellant Galland's name

in such a statement as she furnished respondent could nowise bind him.

A careful search of the record fails to show any evidence upon which appellants, on any theory, can be held liable to respondent. If we understand respondent's contention correctly, it is that defendants are liable for any indebtedness growing out of the conduct of the business by defendants Converse and McNeill from or shortly before the time appellants subscribed for stock in the corporation which it was expected would be organized. No act on the part of either appellant, which could operate as an estoppel in favor of respondent, is disclosed by the record.

The general definition of a partnership, as stated by Chancellor Kent, reads as follows:

" 'A contract of two or more competent persons, to place their money, effects, labor and skill, or some or all of them, in lawful commerce or business, and to divide the profit and bear the loss, in certain proportions.' " 47 C. J. 640.

The testimony is absolutely silent as to any intention on the part of appellants to enter into any copartnership with defendants Converse and McNeill in the contracting business. There is no evidence as to any right on the part of appellants to any particular share of any profits which might be earned by such business, nor does it appear in what proportion losses sustained thereby should be borne by appellants. Appellants were absent from Los Angeles, and it is not contended that they were actively participating in the business which was being carried on by defendants Converse and McNeill, or that appellants ever, in any manner, held themselves out as partners in the business. As we read the evidence, it clearly shows that appellants intended to become stockholders in a corporation which was to engage in a specific business, to wit, the selling

and installation of "Hot-Kold" furnaces. As a matter of fact, the corporation never engaged in this or any other business, as its organization was never perfected. We find from the evidence no more reason for holding appellants liable to respondent, as copartners with defendants Converse or McNeill in the carrying on of a contracting business, than could exist had the defendants named engaged as copartners in some entirely different business in the operation of which they incurred obligations which they could not pay.

██ The law of California pleaded by respondent applies to cases where two or more persons are associated in a business. As we find that appellants were not associated with defendants Converse and McNeill in the business in the course of which the obligation to respondent was incurred, this law is not applicable.

We are unable to find in the record any evidence which, under any law, makes appellants, or either of them, liable with defendants Converse and McNeill upon the obligation upon which respondent sues in this action.

We are of the opinion that, upon the record before it, the trial court correctly granted the motions made separately by appellants for a nonsuit at the close of respondent's case.

██ Respondent argues that, as this appeal is taken from an order granting a new trial, the only question to be determined is whether or not the trial court abused its discretion in granting the motion; citing *Sutherland v. Northern Pacific R. Co.*, 124 Wash. 413, 214 Pac. 823. Respondent's motion for a new trial was based upon three grounds, as above stated. Examination of the record fails to disclose that respondent ever suggested or urged any "accident or surprise," as contended in the third ground mentioned in its motion. Under the record, this ground could not have been con-

sidered by the trial court in granting the new trial. The other two grounds alleged, taken in connection with the record before us, raise questions of law only, and do not involve any matter resting within the sound discretion of the trial court. *Dunkle v. Spokane Falls & N. R. Co.*, 20 Wash. 254, 55 Pac. 51; *Bender v. Rinker*, 21 Wash. 636, 59 Pac. 504; *Doyle v. Great Northern R. Co.*, 43 Wash. 558, 86 Pac. 861; *Crowl v. West Coast Steel Co.*, 109 Wash. 426, 186 Pac. 866.

In the case at bar, the question of whether or not the evidence introduced or offered by respondent makes a *prima facie* case entitling it to recover judgment against appellants, or either of them, is a pure question of law, there being no conflict whatever in the evidence, and consequently no matter of discretion on the part of the lower court was involved in the ruling made by that court upon respondent's motion for a new trial.

We conclude that the evidence introduced by respondent fails to make a *prima facie* case showing that it is entitled to judgment against appellants or either of them.

The order appealed from is reversed, with instructions to the trial court to overrule respondent's motion for a new trial and enter judgment in accordance with its ruling sustaining appellants' motions for a nonsuit.

TOLMAN, HOLCOMB, FULLERTON, and MAIN, JJ., concur.